## THE FIRST-MECHANICS NATIONAL BANK OF TRENTON, A NATIONAL BANKING CORPORATION, PLAINTIFF-RESPONDENT, v. MILTON M. KATZ, T/A EVEREADY REFRIGERATION CO., DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued July 25, 1955—Decided September 1, 1955.

Before Judges FRANCIS, HALL and BURTON.

*Mr. G. Henry Weston* argued the cause for defendant-appellant.

*Mr. Edward J. McCardell, Jr.,* argued the cause for plaintiff-respondent (*Messrs. Jamieson & Walsh,* attorneys).

The opinion of the court was delivered by

BURTON, J. S. C. (temporarily assigned). Defendant appeals from a judgment against him in the sum of $858 for conversion of plaintiff's property. For the purposes of this appeal, defendant concedes that, technically, a conversion of the property occurred, but contends that the damages admeasurable in reference thereto have not been properly established.

The agreed statement of evidence and proceedings included in the appendix indicates the following to have been the factual situation. George Parish, a restaurateur, borrowed $1,122.72 from the plaintiff, giving as security for such loan a chattel mortgage covering a number of items of his business equipment, including three refrigerated cases and a freezer. The chattel mortgage was duly and properly recorded. Two weeks after the date of the chattel mortgage, Parish placed an order with the defendant for the purchase of certain refrigerator equipment, at a total price of $3,713.40. The transaction was evidenced by a conditional sales agreement, dated approximately seven weeks subsequent to the placing of the order, and in which there was included, as part payment of the purchase price, a trade-in allowance in the sum of $858. Such allowance had reference to the three refrigerated cases and freezer, above-mentioned, and it does not appear to be disputed that Parish, at the time of the placing of his order with the defendant, did not inform the latter that such equipment was then subject to a chattel

mortgage held by the plaintiff. The defendant testified that Parish had represented to him that he was the sole owner of the equipment. The defendant also testified that he had no actual knowledge of the existence of plaintiff's chattel mortgage.

Parish testified that when the refrigerated cases were being moved by the defendant, one of them fell apart, and that the others were removed from the restaurant premises to the rear of his building.

Subsequent to the date of the conditional sales agreement, Parish filed a petition in bankruptcy. Thereafter, plaintiff instituted foreclosure proceedings on its chattel mortgage. At the sale held thereunder, none of the refrigerated cases was sold. The report of the sale carries the notation that the cases were "not located."

The only evidence adduced in reference to the value of the cases was as follows: One Charlip testified that he had submitted to the plaintiff an appraisal of Parish's equipment at the time he obtained the loan of $1,122.72. In such appraisal the cases in question were listed at a total value of $1,250. Charlip testified, however, that he was unfamiliar with this type of equipment, and that he had relied on valuations given him by Parish. Parish denied that he had valued the cases at $1,250, but admitted that he had availed himself of Charlip's appraisal for the purpose of obtaining the loan from plaintiff. The defendant testified that his allowance of $858 to Parish on the trade-in of the equipment was merely intended as a discount on the price of the new equipment and to satisfy the down payment requirements of the financing institution to which the conditional sales agreement was later assigned. Defendant also offered the testimony of two experts, both of whom testified that they had examined the cases a few days before the trial—or nearly 14 months after the conversion—and that the cases were worthless. No proof was offered as to the original cost of the equipment. And, no testimony was elicited as to the condition of the same at the time of the conversion, except the statement that one of the cases fell apart.

■ The record in this matter lacks the specific statement of findings of fact and conclusions of law called for by *R. R.* 7:16–3. We are unable to determine the basis for the trial court's conclusion that the damages sustained by plaintiff amounted to $858, except to surmise that such sum having been recited as the trade-in allowance given by defendant to Parish, the court considered that it properly did duty as evidence of the market value of the chattels at the time of the conversion. *Cf. Ward v. Huff,* 94 *N. J. L.* 81 (*Sup. Ct.* 1919). Our attention has not been directed, in the briefs of counsel, to any authority which recognizes a trade-in allowance to be reliable or competent proof of value. Our own research has disclosed none, but, on the contrary, it has revealed that in at least two instances, courts have rejected such evidence. *Vide Smith v. Bell,* 62 *So.* 2d 513 (*La. Ct. App.* 1952) and *Lancaster v. Jordan Auto Co.,* 185 *Miss.* 530, 187 *So.* 535 (*Sup. Ct.* 1939). *Cf.,* also, *Wilson Motor Co. v. Lamping Motors, Inc.,* 194 *Wash.* 416, 78 *P.* 2d 559 (*Sup. Ct.* 1938), wherein the court distinguished between market value and trade-in price.

[2] The basis for distrust of trade-in allowances as proof of market value appears to be the recognition of the fact that it is accepted practice in mercantile transactions for a seller to allow greater than true value on a traded article to induce a sale. This knowledge has been the subject of judicial notice. See *Raymond S. Roberts, Inc., v. White,* 117 *Vt.* 573, 97 *A.* 2d 245 (*Sup. Ct.* 1953) and *Morriss-Buick Co. v. Pondrom,* 131 *Tex.* 98, 113 *S. W.* 2d 889 (*Comm. App.* 1938).

■ We are constrained to agree that proof of a trade-in allowance, without more, does not establish market value. However, inasmuch as, under the circumstances here present, we are not able to discern from the record the basis of the trial court's conclusion as to the amount of the damages, we consider it necessary to reverse the judgment below and to remand the matter for retrial of the issue of the damages to which the plaintiff is entitled.

Reversed and remanded.